Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I ESPECIAL

| EL PUEBLO DE PUERTO RICO<br><br>Apelada<br><br>v.<br><br>TIFFANY MARIE MARTÍNEZ<br><br>Acusada - Apelante | TA2026AP00338 | Apelación procedente del Tribunal de Primera Instancia, Sala de Mayagüez<br><br>Crim. núm.: I1CR202500288 I1CR202500289<br><br>Por: Ley 154-2008 Art. 2.B, Art. 3.A |

Panel integrado por su presidente, el juez Sánchez Ramos, la jueza Romero García y el juez Pérez Ocasio.

Sánchez Ramos, juez ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 25 de junio de 2026.

El Tribunal de Primera Instancia ("TPI") encontró culpable a la apelante por dos delitos menos graves a raíz de que esta dejó a su mascota sola en un vehículo de motor. Según se explica en detalle a continuación, concluimos que procede la confirmación del fallo en cuanto al delito relacionado con negligencia en el cuido de una mascota, pero procede la revocación del fallo en cuanto al otro delito, pues no se probó, más allá de duda razonable, que se le haya causado sufrimiento a la mascota.

I.

Por hechos acontecidos el 25 de octubre de 2025, el Ministerio Público presentó dos (2) denuncias en contra de la Sa. Tiffany Marie Martínez (la "Apelante" o "Imputada") por infracciones a los Artículos 2(b) y 3(a) del Capítulo II de la Ley 154-2008 ("Ley 154"), conocida como Ley para el Bienestar y la Protección de los Animales. 5 LPRA secs. 1665(b) y 1666(a). En esencia, se le imputó dejar a su perro de servicio a solas, encerrado en un auto, sin agua o alimento, y con poca ventilación.

El 29 de enero de 2026, el TPI celebró el juicio en su fondo. Las partes estipularon ante este Tribunal que es certero y completo el relato de la Apelante, en cuanto a la prueba oral que desfiló en el juicio[1]. Ello a raíz de que los defectos de la regrabación no permitían producir una transcripción de dicha prueba.

En el juicio declaró el Agente de la Policía Municipal de Mayagüez, Freddy Figueroa Olán (el "Agente"). Este declaró que, en la noche del 25 de octubre de 2025, intervino con una auto marca Honda, modelo Accord, color negro y tablilla VO26957 (el "Vehículo"), debido a que estaba estacionado en contra del tránsito en la Calle Dr. Basora, en el Municipio de Mayagüez, al lado del restaurante Casa de Abu.

Mientras expedía el boleto de tránsito, el Agente se percató que dentro del vehículo de motor había un perro en el asiento posterior. Al acercarse al cristal de la puerta trasera del lado del conductor, el perro notó la presencia del Agente y con expresión alegre colocó sus dos patas delanteras en esa puerta.

Alrededor de las 10:56 pm, el Agente decide intervenir y sacar al perro del auto (los cristales estaban entreabiertos). Subsecuentemente, el Agente llevó al perro al cuartel de la Policía Municipal donde le proveyó agua y alimento. El Agente declaró que colocaron al can en una celda y que estaba en buen estado anímico, cuidado y de salud.

Como el perro tiene un dispositivo de rastreo, la Apelante llegó hasta el cuartel de la Policía. Expresó el Agente que la Apelante le indicó que ella se encontraba en una actividad en el Restaurante Casa Abu, a pocos pies del Vehículo, y que al animal no carecía de nada mientras se encontraba en el interior del auto. El Agente, al

---

[1] El Procurador General únicamente señaló que, **de la argumentación del Ministerio Público en la *Minuta***, surgía que transcurrieron tres (3) horas "desde el descubrimiento del can dentro del vehículo hasta que el testigo decidió extraerlo" y que, además, el Agente tuvo que alimentar al perro el cual, por ser un animal de compañía, debía permanecer todo el tiempo con la Apelante.

ver a la Apelante desesperada por su mascota de servicio, y al percatarse que el perro se veía en buen estado de salud, tomó la decisión de entregarle el perro a la Apelante.

Culminado el testimonio del Agente, la defensa no lo contrainterrogó, ni presentó prueba a su favor. Según la minuta del juicio, el Ministerio Público arguyó que el Agente estuvo tres (3) horas al lado del Vehículo, por si llegaba alguien.[2] Por su parte, la defensa planteó que hubo ausencia de prueba sobre falta de agua y alimento o ventilación. Afirmó que el mero hecho de estar encerrado en un auto no era constitutivo del delito.

El TPI encontró culpable a la Imputada de los delitos imputados y la sentenció a pagar una multa de $4,000.00 por cada uno de ellos[3], más el pago de $100.00 por cada delito para el fondo de víctimas de delito. La Defensa solicitó reconsideración en corte abierta, lo cual fue denegado en el acto por el TPI.[4]

El 11 de febrero, la Apelante instó una *Moción de Reconsideración,* la cual fue denegada por el TPI mediante un dictamen notificado el 10 de marzo.

Mientras tanto, el 2 de marzo, la Imputada presentó una apelación (TA2026AP00219). En esa ocasión, otro panel de este Tribunal estimó que ese recurso era prematuro porque no se había resuelto la moción de reconsideración presentada el 11 de febrero. Véase *Sentencia* notificada el 20 de marzo. Por constituir la ley del caso, nos vemos obligados a considerar que, en efecto, el término para apelar comenzó el 10 de marzo.

El 6 de abril, la Imputada presentó la apelación que nos ocupa; formula los siguientes señalamientos de error:

---

[2] Véase, *Minuta*, Anejo 6 del Apéndice del recurso de Apelación.
[3] Aunque el Procurador General señala que a la Apelante se le impuso una sola multa de $4,000.00, lo cierto es que hay dos (2) sentencias en el récord en las que se le imponen $4,000.00 de multa a la Apelante en cada una.
[4] *Íd.*

Primer error:
Erró el Tribunal de Primera Instancia en la apreciación de la prueba presentada en el juicio en su fondo por el Ministerio Público, al no haber probado, más allá de duda razonable, los elementos de los delitos tipificados en los Artículos 2(b) y 3(a) de la *Ley 154-2008* por los cuales fue encontrada culpable la apelante.

Segundo error:
Erró el Tribunal de Primera Instancia al no mantener un récord adecuado de la grabación de los procedimientos del juicio lo cual impide una revisión apelativa efectiva sobre la suficiencia de la prueba y la revisión y/o corrección del fallo emitido, dejando a la apelante en estado de indefensión apelativa.

Por su parte, el Procurador General presentó su alegato en oposición. Resolvemos.

II.

En todo proceso penal, el Estado tiene la obligación de probar que el acusado es culpable más allá de duda razonable. Art. II, Sec. 11, Const. ELA, 1 LPRA. Por tal razón, la Regla 110 de las de Procedimiento Criminal, 34 LPRA Ap. II, R. 110, establece que, en todo proceso penal, se presumirá inocente al acusado, mientras no se probare lo contrario y, en todo caso, de existir duda razonable acerca de su culpabilidad, se le absolverá. Véase, además, la Regla 110 de Evidencia, 34 LPRA Ap. VI, R. 110(f).

En cuanto a la prueba testimonial, "la evidencia directa de una persona testigo que merezca entero crédito es prueba suficiente de cualquier hecho, salvo que otra cosa se disponga por ley". 32 LPRA Ap. VI, R. 110(d). Véase, además, *Trinidad v. Chade*, 153 DPR 280, 291 (2001). Es al juzgador de hechos a quien le corresponde resolver la credibilidad de un testigo cuando haya partes de su testimonio que no sean aceptables e incluso sean increíbles. *Pueblo v. Chévere Heredia*, 139 DPR 1, 15-16 (1995). Después de todo, "no existe el testimonio perfecto; el cual, de ordinario, en lugar de ser indicativo de veracidad, es altamente sospechoso por cuanto, por lo general, es producto de fabricación". *Pueblo v. Cabán Torres,* 117 DPR 645, 656 (1986). Por esta razón, las contradicciones de un

testigo, sean estas intrínsecas o relacionadas con otros testimonios, no conllevan necesariamente la revocación de un fallo condenatorio, a menos que produzcan en el foro apelativo una "insatisfacción o intranquilidad de conciencia tal" que estremezca su sentido básico de justicia. *Pueblo v. Rivero, Lugo y Almodóvar,* 121 DPR 454, 474 (1988); véase, además, *Pueblo v. Santiago Lugo,* 134 DPR 623, 631 (1993).

De otra parte, la determinación de culpabilidad de una persona es revisable en apelación, pues la apreciación de la prueba desfilada en un juicio es un asunto combinado de hecho y de derecho. *Cabán Torres,* 117 DPR, a la pág. 653. No obstante, al evaluar la prueba presentada ante el juzgador de los hechos, los tribunales apelativos deben reconocer la inigualable posición en que están los foros de primera instancia. *Íd.,* a las págs. 653-654. Es ese juzgador primario quien observa el comportamiento de los testigos al momento de declarar y, sobre la base de ello, adjudica su credibilidad. *SLG Rivera Carrasquillo v. AAA,* 177 DPR 345, 357 (2009).

En este contexto, y en cuanto a la apreciación de la prueba, no nos corresponde determinar, a base de nuestra propia apreciación independiente de la prueba, si hubiésemos declarado culpable al imputado por entender que se demostró su culpabilidad más allá de duda razonable. En vez, nuestra función en este contexto se circunscribe, propiamente, a determinar si el juzgador de hechos, con la prueba que tenía ante sí, podía razonablemente concluir que el acusado era culpable, más allá de duda razonable, de los delitos imputados. Art. II, Sec. 11, Const. ELA, 1 LPRA; Regla 110 de las de Procedimiento Criminal, 34 LPRA Ap. II, R. 110; *Rivero, Lugo y Almodóvar, supra.* Véase también, *Jackson v. Virginia,* 443 U.S. 307, 317 (1979) (en apelación, solo procede revocar por

insuficiencia de prueba cuando "no rational trier of fact could find guilt beyond a reasonable doubt").

En resumen, la apreciación de la prueba por el juzgador de los hechos es merecedora de una gran deferencia por parte del tribunal apelativo. *Pueblo v. Rodríguez Pagán,* 182 DPR 239, 258-259 (2011). Por ello, en "ausencia de pasión, prejuicio, parcialidad o error manifiesto, y a menos que la apreciación de la prueba se aleje de la realidad fáctica o la prueba sea inherentemente imposible o increíble", debemos, como foro apelativo, abstenernos de intervenir con la misma. *Pueblo v. Maisonave Rodríguez,* 129 DPR 49, 63 (1991).

III.

La Ley 154 fue promulgada en atención al cambio dramático en la visión mundial en cuanto a los animales se refiere, debido a que estos "se han convertido en partes fundamentales de nuestras vidas y sociedad". Exposición de Motivos de la Ley 154. Así pues, "se ha reconocido que los animales son entes sensitivos y dignos de un trato humanitario". *Íd.*

Asimismo, se desprende de la Exposición de Motivos de la Ley 154 que, antes de su aprobación, los esfuerzos para procesar a quienes maltrataban animales se vieron frustrados, en parte, por las penas leves establecidas para el delito cometido. *Íd.* La Ley 154 prohíbe el maltrato a animales en ciertos contextos y persigue la imposición de penas más severas por dicha conducta.

En lo pertinente, el Artículo 2(b) de la Ley 154, *supra,* tipifica como delito menos grave el que se "encierre, amarre o de otro modo limite el movimiento de un animal **causándole sufrimiento innecesario** …".[5]

---

[5] El Artículo 2(u) de la Ley 154-2008, 5 LPRA sec. 1660(u), define sufrimiento innecesario como "causar sufrimiento que no es necesario para la seguridad, salud o bienestar del animal o de otros seres en su ambiente".

Por su parte, el Artículo 3(a) de la Ley 154, *supra,* tipifica como delito menos grave que una persona, "a sabiendas, descuidadamente o por negligencia[6], fall[e] en proveer **cuidado mínimo** a un animal en posesión de dicha persona".[7]  La persona que comete este delito se expone a una multa que no exceda $5,000.00.  Art. 3(b) de la Ley 154, 5 LPRA sec. 1666(b).

IV.

Una multa "consiste en la obligación que el tribunal impone al convicto de pagar al Estado Libre Asociado de Puerto Rico la cantidad de dinero que fija la sentencia"; en cuanto al modo de fijarla, se dispone que:

> El importe de la multa será determinado por el tribunal tomando en consideración la situación económica, las responsabilidades de familia, el grado de codicia o ganancia mostrado en la comisión del hecho delictivo, la profesión u ocupación del sentenciado, su edad y salud, así como las circunstancias particulares del caso, entre otras.  33 LPRA sec. 5087.

Asimismo, el Artículo II, Sección 12, de la Constitución del Estado Libre Asociado de Puerto Rico, dispone que "no se impondrán castigos crueles e inusitados".  Const. PR, Art. II, Sec. 12, 1 LPRA.[8]  Esta cláusula "requiere penas proporcionales a la severidad de la conducta delictiva, penas no arbitrarias, en fin, de la pena menos restrictiva de libertad para lograr el fin por el cual se impone".  *Pueblo v. Pérez Zayas,* 116 DPR 197, 201 (1985) (Citas omitidas).

---

[6] El Artículo 2(o) de la Ley 154-2008, *ante,* define negligencia como "[u]n tipo de **maltrato** que consiste en faltar a los deberes o dejar de ejercer las facultades de proveer adecuadamente el **cuidado mínimo** y continuo a un animal; falta al deber de cuidado y supervisión".

[7] El Artículo 2(f) de la Ley 154-2008, *ante,* define cuidado mínimo como "el cuidado suficiente para preservar la salud y bienestar de un animal, exceptuando emergencias o circunstancias más allá del control razonable del guardián".  En lo pertinente, incluye lo siguiente:

v. Acceso continuo a un área. Acceso continuo a un área es:

a) Que el animal tenga el espacio adecuado para ejercicio necesario para su salud. Espacio inadecuado puede ser evidenciado por debilidad, estrés o patrones anormales de comportamiento.

b) Temperatura apta para la salud del animal en atención a su hábitat natural.

c) Ventilación adecuada.

[…].

[8] De igual modo, la Octava Enmienda de la Constitución de los Estados Unidos consagra la prohibición contra la imposición de castigos crueles e inusitados. Emda. VIII, Const. EE. UU., LPRA, Tomo 1.

Al realizar este balance, los tribunales deben evaluar los siguientes factores: (1) el daño causado a la víctima y a la sociedad; (2) la culpabilidad o actitud mental de la persona convicta al perpetrar los hechos; y (3) si la persona convicta tendrá oportunidad de disfrutar del beneficio de libertad bajo palabra. *Pueblo v. Echevarría Rodríguez I*, 128 DPR 299, 372 (1991); *Solem v. Helm*, 463 US 277, 292 (1983). En el ámbito federal también se han reconocido los siguientes factores adicionales: (1) la naturaleza de la ofensa; (2) la pena impuesta por la comisión del mismo delito en otras jurisdicciones; y (3) la pena impuesta a otras personas convictas en la misma jurisdicción. *Solem*, *supra*; *Rummel v. Estelle*, 445 US 263, 295 (1980).

V.

En cuanto al delito por negligencia (Artículo 3 de Ley 154), concluimos que procede confirmar el fallo de culpabilidad. El tribunal podía razonablemente concluir, más allá de duda razonable, que la conducta de la Imputada, al dejar sola a la mascota por un periodo prolongado, con poca ventilación, no constituye el "cuidado mínimo" que se debe a esta. Ciertamente, esta conducta no fue necesaria para la seguridad, salud o bienestar del animal.

En cuanto al delito por confinamiento (Artículo 2 de Ley 154), concluimos que la prueba no le permitía al tribunal concluir que se le causó "sufrimiento" al perro, según requiere el estatuto. No hay en el récord prueba alguna a los efectos de que el perro sufrió como consecuencia de los hechos relatados por el Agente. El hecho de que el perro estuviese tres horas en el Vehículo no permite, sin más, concluir que concurrió el sufrimiento que requiere el delito. Adviértase que, si realmente el perro hubiese estado sufriendo, el Agente claramente hubiese sacado al perro del Vehículo mucho

antes del transcurso del tiempo durante el cual supuestamente se mantuvo al lado del Vehículo.

En efecto, no hubo prueba a los efectos de que el perro se encontrara en mal estado o en estado de sufrimiento aparente. De hecho, luego de ser llevado al cuartel, el perro fue devuelto casi inmediatamente a la Imputada. Tampoco hubo prueba de que, dentro de las condiciones imperantes en ese momento (tamaño del Vehículo, temperatura, cantidad de ventilación, etc.), un perro de ese tipo inevitablemente habría sufrido, aunque no resultase aparente. Adviértase que era de noche y no hay controversia a los efectos de que la ventana del Vehículo estaba entreabierta. El que el perro hubiese mostrado alegría al acercarse el Agente no es suficiente para inferir sufrimiento, más allá de duda razonable.

En cuanto a la pena impuesta por el delito de negligencia, concluimos que la misma debe reducirse, por apartarse del principio básico de la proporcionalidad de las penas. A pesar de que medió negligencia, lo cierto es que la Imputada mantiene un vínculo estrecho con su mascota, los hechos ocurrieron en horas de la noche, no se le causó daño físico al perro, y la Imputada buscó al perro rápidamente en el cuartel, por su propia iniciativa. Tampoco se desprende del récord que la Imputada sea reincidente o tenga antecedentes de maltrato a animales. Por consiguiente, procede reducir la multa a $2,000.00, más la pena especial ($100.00), por el delito menos grave tipificado en el Artículo 3(a) de la Ley 154.

## VI.

Por los fundamentos que anteceden, se revoca la sentencia por violación al Artículo 2(b) de la Ley 154, 5 LPRA sec. 1665, y se modifica la pena impuesta por la violación al Artículo 3(a) de la Ley 154, 5 LPRA sec. 1666, y así modificada, se confirma dicha sentencia.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones